## BRANCH OF THE BANK OF THE STATE OF ALABAMA AT HUNTSVILLE v. MARSHALL ET ALS.

1. *Semble*—An answer denying the matter charged in the bill, if uncontradicted, is conclusive evidence for the defendant; but the defendant must make out by proof matters stated by way of avoidance of the statements or charges of the bill.
2. An affirmation in the answer need not be proved, if responsive to the stating or charging part of the bill, or an interrogatory authorized by either of them; but if the bill contains *nothing more* than the *stating* part, with a prayer that the defendant may answer, the complainant is not compelled to receive the defendant's oath beyond the mere denial of the equity of the bill.
3. Positive answers, responsive to the bill are not outweighed by proof of facts which are not irreconcilable with the truth of the answers and the fairness of the matters they state: and the more especially where each material fact is related only by a single witness.

APPEAL from the Court of Chancery, sitting at Huntsville.

On the 28th February, 1837, the plaintiff filed a bill, in which it is alledged that the plaintiff is the legal proprietor of a bill of exchange, drawn by Wm. E. Phillips, on the 3d February, 1836, for the sum of twenty-one hundred dollars, on B. McKiernan, of New Orleans, in favor of Josiah W. Marshall, and indorsed by the latter. This bill was regularly protested for

non-acceptance and non-payment, and the parties duly notified thereof. When it was drawn and indorsed Marshall resided in the county of Madison, but in October, 1836, he removed with all his effects to Tennessee, where he still resides. In September, 1836, the plaintiff brought a suit against him as indorser of the bill in the Circuit Court of Madison, which is still pending.

The bill also charges, that for the purpose of defrauding the plaintiff and other creditors, Marshall pretends to be insolvent and has made a fraudulent conveyance of all his property; that before leaving this State he sold a negro man, (a blacksmith,) to Samuel Jordan, of Limestone county, for the sum of twenty-one hundred dollars, and received his note therefor, payable in June, 1837. This note, for the purpose of defrauding Marshall's creditors, was made payable to his brother-in-law, Richard Neale, of Tennessee. The bill charges, that Neale was not present when the negro was sold, or the note taken, had no interest in the transaction, and knew nothing of it until it was consummated.

Phillips, Marshall, Neale and Jordan, are made defendants, and called on "full, true and perfect answers to make, to all the foregoing allegations, as fully and particularly as if the same were herein again repeated, and they more particularly interrogated thereto."

The bill prays that an injunction may issue to restrain Jordan from paying to Neale, or Marshall, the sum due on the note, and that he be decreed to pay the same to the plaintiff, in satisfaction of the debt due to the Bank by Marshall, and concludes with a prayer for general relief. An injunction was awarded accordingly and the defendants Marshall, Neale and Jordan answered separately.

Marshall admits that that the bill of exchange, as alledged by the plaintiff, was drawn by Phillips and indorsed by him; admits that he sold the negro to Jordan for twenty-one hundred dollars, and took his note for the sum payable to Richard Neale, but denies that in so doing he was influenced by any fraudulent intent. He avers that some years previously he became indebted to Neale in a sum equal to twenty-one hundred dollars, for funds of Neale which he had used, and to secure this sum he caused the note of Jordan to be made payable to

him; *further*, although Neale was not present, defendant, immediately after the transaction took place, informed him of it, and sent him the note. Defendant is informed, and believes, that Neale, soon after receiving the note, sent it to his brother, B. Neale, who was to act as his agent in its collection; admits that Phillips is insolvent, and claims the benefit of a demurrer.

Neale admits that Marshall sold the slave as alledged by plaintiff, to Jordan, for twenty-one hundred dollars, and took a note in his name therefor. He avers that Marshall was indebted to him in an amount equal to the note, or thereabouts, and promised to send him in payment the note of some solvent person, and accordingly sold the slave to Jordan, and in a short time thereafter sent the note in compliance with his understanding; and he accepted the same in satisfaction of Marshall's indebtedness. Defendant denies all fraud, and demurs to the bill.

Jordan admits the purchase of the slave, as alledged by the plaintiff, at a time when Neale was not present; that he owes the sum of twenty-one hundred dollars, due in June, 1837, which he is willing to pay as the Court may direct.

In May, 1840, the plaintiff filed an amended and supplemental bill, setting forth, that in April, 1837, a judgment was recovered in the suit at law against Marshall, for the sum of twenty-three hundred and sixteen dollars, besides costs; that execution had been sued out thereon and returned "no property found." The defendants omitting to answer this bill, it was taken as confessed in the spring of 1841.

The cause was tried at the term of the Chancery Court holden in June on the bill answers and proofs:

1. The plaintiff offered, under the amended and supplemental bill an exemplification of the suit at law showing the execution and return as alledged.

2. The deposition of B. Neale states that Richard Neale is his brother, and Marshall his brother-in-law, having married his sister. Witness had known but little of his brother for the last eight years; he was then in moderate circumstances. Between the 10th and 20th April, 1837, Marshall handed witness the note in question, stating that his brother had sent it to him to collect. R. Neale and Marshall lived in Tennessee,

but a considerable distance from each other, and witness lived in the neighborhood of Jordan.

3. George W. Martin proves that Marshall was indebted to him, on the 1st March, 1837, six hundred dollars, by promissory note, and upon being called on for the money, promised to pay it as soon as he collected a note of Samuel Jordon for twenty one hundred dollars, the consideration of which was the sale of a negro blacksmith by the former to the latter.

4. George Connally proves the insolvency of Marshall and Phillips, and their removal from this State about 1837. They were considered good for their debts up to a short time previous to their removal.

The Chancellor dismissed the bill at the plaintiff's cost.

It has been suggested in this Court, that Richard Neale has died intestate, since the rendition of the decree by the Chancellor, and, by consent, William Robinson is made a party in his stead.

McClung, for the plaintiff in error insisted, that in order to authorize a Court of Chancery to entertain this cause it was not necessary that Marshall should have been prosecuted to insolvency. If such were the law, the money might have been collected of Jordan and withdrawn from the jurisdiction of the Court before a judgment could have been obtained.

The allegation of fraud between Marshall and R. Neale is sufficiently shown by the proof. Their answers in alledging the transaction to have been founded on a sufficient consideration, and dictated by good faith are irresponsive to the bill, and are not, in the absence of proof in their favor, entitled to consideration.

Robinson, for the defendant. The proof of fraud is wholly insufficient to disprove the positive and direct denials of the answers. But if the proof was ample, then it is insisted that the plaintiff prematurely sought a remedy in equity; that the legal remedies were not exhausted. [3 Porter's Rep. 392, 473; 4 John. Ch. Rep. 671, 681, 691; 4 Munf. Rep. 540; 3 Paige's Rep. 311.]

COLLIER, C. J.—The bill alledges a fraud on the part of the defendant, Marshall, in causing the note given by Jordan upon the purchase of the negro, to be made payable to Neale, who was the brother-in-law of Marshall, and to whom the latter was not indebted. And the first question we propose to consider is, whether the answer of Marshall, so far as it negatives a fraud, and his answer and Neal's, affirming an indebtedness by the former to the latter, is to be received as evidence until overbalanced by other testimony.

It is stated in general terms, in many adjudged cases, that where a general replication is filed and the parties proceed to a hearing, all the allegations of the answer, which are responsive to the bill, shall be taken for true, unless they are disproved by two witnesses, or by one witness with pregnant circumstances [Fenno et al v. Sayre & Converse, 3 Ala. Rep. 478, and cases there cited.] And if a bill charges a fraud, a responsive answer, denying the fraud, if uncontradicted, is conclusive evidence for the defendant. [Murray v. Blatchford, 1 Wend. Rep. 583; Cunningham v. Freeborn, 3 Paige's Rep. 557.] But as a *general rule*, the defendant must make out by proof what he insists upon by way of avoidance of the statements or charges of the bill. [Woodcock v. Bennett, 1 Cow. Rep. 743-4 and note; Lucas v. The Bank of Darien, 2 Stew. Rep. 280; Hogthorp v. Gill's admr's, 1 Gill. and J. Rep. 272; Paynes v. Coles, 1 Munf. Rep. 373.]

An affirmation in the answer need not however be proved, if it be responsive to the stating or charging part of the bill, or an interrogatory authorized by either of them; [Fenno et al v. Sayre & Converse, 3 Ala Rep. 478,] for in such case the complainant has, by the frame of his bill, engaged to prove the negative. He has voluntarily assumed the *onus*, and cannot complain of the difficulty of the task he has undertaken. The complainant, in the formation of his bill, may at his election make as much or as little use of the defendant as he pleases, except that, according to the established course of Chancery, he must receive a direct denial of his allegations by the defendant as evidence, as well as pleading. Responsive affirmations by the defendant, are most usually invited by the charging part of the bill, which is a negation of what are supposed to be the defendant's pretences, or by the extended scope of the

interrogatories. Neither of these it is said are essential parts of the bill, but are usually inserted, if with any definite object, to obtain a more particular disclosure from the defendants. If the bill contains the stating part, with a prayer that the defendant may answer, omitting all charges and interrogations, the complainant will not be compelled to receive the defendant's oath beyond a mere denial of the equity of his bill. [See 2 Mad. Ch. Prac. 137; Partridge v. Haycroft, 1 Ves. 574; Wakeman v. Grover, 4 Paige's Rep. 23.]

In the case before us, the bill, in stating the complaint, directly avers a fraud on the part of Marshall, in taking the note of Jordan payable to Neale; and charges that no consideration moved from Neale to Marshall therefor, but the sole inducement of the latter in thus taking the note was to defraud his creditors. According to the principles we have laid down, the answer of Marshall in denying a fraud is evidence against the plaintiff, for it is a direct negative of the equity of the bill. In respect to the affirmation of Marshall and Neale, that the former was indebted to the latter in a sum equal to the amount of the note, it may be remarked that the bill not only alledges a positive fraud, but also charges that there was no indebtedness. Now if the bill had merely stated the fraud, the affirmative matter contained in the answer would have been regarded as pleading, the burthen of proving which would have rested upon the defendants. But such is not the case. The plaintiff charges the non-existence of a fact, and that charge can only be answered by an affirmation of its existence. Such in effect are the answers of Marshall and Neale, so far as they set forth the inducement to make Jordan's note payable to the latter, and according to the view which we have taken of the law, in this respect they are evidence.

The question now is, does the proofs taken by the plaintiff overbalance the weight which is due to the answers. The substance of all the testimony is about this: some eight years before the present suit was commenced, the defendant, Neale, was in moderate circumstances; Marshall, in April, 1837, handed a brother of Neale, residing in Jordan's neighborhood, the note of the latter to collect, with the remark that his brother had sent it to him for that purpose. Marshall became insolvent a short time previous to his removal from this State; and

in March, 1837, promised a man living in Tennessee that he would pay him six hundred dollars, as soon as he collected a note which he held on Samuel Jordan for twenty-one hundred dollars. The mere recital of this proof is sufficient to show, that it does not outweigh the positive asseverations of the answers. The declaration of Marshall, when called on by a creditor, that he would pay him from the proceeds of Jordan's note is inadmissible. *Prima facie* he had no interest in it, and any statement made by him in regard to it, could have no more influence than the declaration of any third person. There was nothing unusual in one brother sending to another a note to collect for him; especially when the latter resided in the immediate vicinity of the debtor. Nor can a debtor in failing circumstances be restrained in the preference of creditors where he does not interfere with pre-existing liens. But if the evidence was more direct and potent than it is, it might still be objected that the witnesses did not corroborate each other, but each bore testimony to distinct facts.

No question of law arises on the amended and supplemental bill for our consideration. And as it is unnecessary, we will not inquire whether the plaintiff prematurely resorted to equity.

It results from what we have said, that the decree of the Court of Chancery must be affirmed.